UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENARDO NEHEMIAH LEWIS
LUBREEZE LEWIS –[FRANKLIN],

             Plaintiffs,

v.

CITY OF MARIETTA ET AL
And John Doe

CIVIL ACTION

FILE NO.: 1:21-cv-01883-ELR

<u>Plaintiffs' Response to the CITY OF MARIETTA, DAN FLYNN, JOSHUA</u>

<u>MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK'S</u>

<u>MOTION TO DISMISS PLAINTIFFS' 12b Motion to Dismiss</u>

COMES NOW PLAINTIFFS by and through attorney of record, Kamau K.

Mason, Esq. in the above-styled action and hereby files this Response to the

Defendants' Police Officers and Agents of the City of Marietta, in their individual

and professional/official capacities Motion for 12(b) dismissal. The Plaintiff

asserts the elements of the response against each of the named above defendants in

their individual and professional capacities and intends to show the following:

## I. <u>STATEMENTS OF FACTS</u>

On the evening of March 30th / March 31st Mr. Lewis entered the IHOP in order

to purchase take out food.  Register employee Joseph "Bubba"

Sudderth immediately remarked to Renardo Lewis "We're out of bacon." Mr. Lewis went to ask his wife what she wanted to order.

Mr. Lewis re-entered the IHOP approximately 15 minutes later after speaking to his wife. Upon re-entry the IHOP cashier stated to Mr. Lewis that the grill was closed as he was about to order after a lengthy wait. Mr. Lewis asked why the cashier made him wait just to tell him that the grill was closed. The two exchanged words in reference to the lack of professionalism provided by the cashier Joseph. Joseph walked away.

The cook / manager David Vanzant called the police and reported that Mr. Lewis had threatened the staff and that Mr. Lewis postured as if he had a weapon. Police arrived at the scene. [Officers:  Enrique Mallen [now terminated] , Joshua Madison, Stacey Fowler & Noah Mack]. Police officers questioned IHOP employee joseph about the encounter.

The Employee Joseph pointed at Mr. Lewis and again implicated him. Mr. Lewis responded to the employee's taunts.  Marietta Police Officer Madison told Mr. Lewis to "Shut up and show some respect." Mr. Lewis replied to the officer that he should show some respect and that he was a man just like the police officer. Mr. Lewis felt that the officer was purposely demeaning him based upon his being African American.

Officer Mallen grabbed Mr. Lewis by the arm. Mr. Lewis pulled his arm away. The Officers separated the husband and wife. Officers surrounded Mr. Lewis as Officer Madison spoke to Mrs. Lewis. Marietta Police put on gloves and formed a triangle formation around Mr. Lewis. Officers grabbed Mr. Lewis and pinned him against the wall as he attempted to provide his identification.

Officers beat Mr. Lewis in the face, causing damage and swelling to his eye alongside head trauma. Officers sat on Mr. Lewis until IHOP patrons chanted "I can't' breath."

Marietta Police arrested and charged Mr. Lewis with up to 27 counts including terroristic threats and assault. Mr. Lewis was taken to the hospital by Marietta Police. His tooth fell from his while at the jail. Mr. Lewis was held in jail for more than 30 days. Mr. Lewis was indicted.

Mr. Lewis hired Counsel Sarah Flack. Sarah Flack was able to obtain Bond on approximately May 2nd 2019. In and around May 15th Cobb county Sherriff's Department came to arrest Mr. Lewis again and removed him from his home by force only to determine on the way to the jail that the arrest was in error after Acting District Attorney John Melvin was contacted by Attorney Sarah Flack. Mr. Lewis was placed on house arrest and curfew impositions from May 2019 until August 2020. It was later determined that the 911 calls were fraudulent. IHOP

3

Employees created the story about the threats and the allegations concerning the weapon.

Attorney Flack obtained a Nolle Prossequi of all charges in December 11th 2020. Ante Litem notices were sent to the Municipalities and Agencies in 2021.  The Complaint was filed in Superior Court timely.  Counsel for the City of Marietta removed the matter to the 11th Circuit.

## II.  Rule 12(b) Dismissal Standard.

"To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins, Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl.Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  The former rule that "a complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," LaGrasta v. First Union Sec., Inc. 358 F. 3d 840, 845, (11th Cir. 2004) – has been retired by Twombly.  James River Ins. Co., 540 F. 3rd at 1274.  Thus, the Court engages in a two-step approach: "When there are well placed factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement relief."  Ashcroft v Iqbal., U.S. 626 (2009).

The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted). Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged — but it has not

"show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). In

keeping with these principles a court considering a motion to dismiss can choose to

begin by identifying pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must

be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at —, 129 S. Ct. at

1949-50 (emphasis supplied). While the Eleventh Circuit has long held claims

asserted under § 1983 against individual officers to a higher-than-usual standard, in

light of the plausibility requirement as articulated in Iqbal, utilization of this

standard is no longer warranted. [Even though] the Iqbal opinion concerns Rule

8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2)

pleading standards for actions regarding an unconstitutional deprivation of rights.

The defendant federal officials raised the defense of qualified immunity and moved

to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing

Twombly, that the legal conclusions in a complaint must be supported by factual

allegations, and that only a complaint which states a plausible claim for relief shall

survive a motion to dismiss.

The Court did not apply a heightened pleading standard. While Swann [v. Southern Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)] , GJR [v. Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359 (11th Cir. 1998)], and Danley [v. Allen, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that those cases were effectively overturned by the Iqbal court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal.

A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis supplied).

Further, the Eleventh Circuit has regularly reiterated that district courts have a "supervisory obligation" to ensure that complaints comply with the requirements of Federal Rules of Civil Procedure 8 and 10. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006). This includes ensuring that plaintiffs link the claims they make to the relevant factual predicates upon which those

claims are premised with sufficient specificity to permit defendants (and courts) to comprehend the nature of the allegations their complaints contain. E.g., Lampkin-Asam v. Volusia County School Bd., 261 Fed. Appx. 274, 277 (11th Cir. 2008) ("[W]e have recently observed that district courts have a 'supervisory obligation,' under Rule 12(e), to sua sponte direct a plaintiff to better plead his complaint 'when a shotgun complaint fails to adequately link a cause of action to its factual predicates.' ") (quoting Wagner, 464 F.3d at 1275).

So-called "shotgun" pleadings ignore the requirements of Federal Rule of Civil Procedure 8(a) that a complaint contain a short and plain statement of the claim demonstrating entitlement to relief. Fed. R. Civ. P. 8(a)(2). They also completely disregard Rule 10(b)'s requirement that discrete claims should be pled in separate counts. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); see also Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

As noted above, when confronted with such a pleading that might otherwise contain sufficient factual allegations to state a claim, but in the absence of a motion for more definite statement, courts are under a duty to, sua sponte, order the complaint repled before resorting to more drastic measures, such as dismissal. See, e.g., Wagner, 464 F.3d at 1273 (reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading sua sponte"); Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001) (discussing district courts' "duty" to order a

8

shotgun complaint repled as an initial matter, reserving dismissal as a sanction for noncompliance with such an order).

### III. ANALYSIS:

A. <u>Defendants' City of Marietta Et Al Shotgun Pleading Assertion Fails Because the Allegations in the Pleadings are Aligned With Magluta v. Samples, 256 F.3d 1282, 1284 & the Above Named Defendants should remain as parties to the Complaint Individually and Professionally.</u>

As stated above, the <u>So-called "shotgun" pleadings ignore the requirements of Federal Rule of Civil Procedure 8(a) that a complaint contain a short and plain statement of the claim demonstrating entitlement to relief. Fed. R. Civ. P. 8(a)(2). They also completely disregard Rule 10(b)'s requirement that discrete claims should be pled in separate counts.</u> Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); see also Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

Here, the Plaintiff has presented well plead, factual allegations [pursuant to Iqubal] through a complaint that alleges using facts aligned with pictures and exhibits presented as evidence that would provide the Court with a clear picture of the causes of action beyond the point of mere conjecture.

Moreover, the City of Marietta's assertion that the Pleading itself is a shotgun pleading is not the case.  In fact, Counsel for the Plaintiffs took appropriate steps

and measures under Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001);

see also Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th

Cir. 2001) to provide statements of facts in a clear and concise grid that points

directly to exhibits, the multiple counts are broken into [lettered] chapters that

correspond with each of named defendants and their perspective groups as well as

their positions within the complaint based upon their actions.

Additionally, the Defendants attempt to lead the Court in the wrong direction

legally, quoting specific facts and allegations from the complaint while asserting

incorrectly that the Plaintiff has "grouped the officers collectively together."  The

Officers were appropriately grouped together because they acted in concert in the

unlawful arrest and the unprovoked beating of the Plaintiff alongside the illegal

detention of his wife.

As a matter of course, should the Court determine that there are issues with the

language of the complaint, then the Complaint can easily be repled to note the

specific actions of each of the officers based upon video footage to be provided to

all Counsel during Discovery and which the Plaintiffs offer to the Court for review;

the video stills having been provided to the Court alongside exhibits [B1 though

B9] noting the camera views of each of the officers and their respective actions.

Contrary to the analysis provided by opposing Counsel, the statement of facts

provided in the complaint notes specifically that Officer Mallen initiates the

unlawful arrest.  See complaint 24 through 30.  While [30] notes that Officers beat Renardo Lewis in the face, the complaint itself can be amended to specifically state that Officer Enrique Mallen beats the Plaintiff in the face while the other Officers continue their unlawful arrest and unprovoked use of force.  The Plaintiff can provide the same video footage which shows that Officer Mallen beats him in the face at 4:40 through 4:46 while his fellow officers pin him to the ground after tasing him multiple times.

The Complaint can also be amended to note that Officer Enrique Mallen also [asserts falsely] to the wife of Renardo Lewis and the patron who filmed the attack that the reason that he hit Renardo Lewis was because Lewis reached for his gun; which was physically impossible as his arms were held by the officers.  <u>See video at 6:14 though 6:16.  Officer Enrique Mallen, as noted, was terminated for dishonesty.</u>

Again, Plaintiffs' assertions that the group of officers is legally sufficient to keep and maintain all claims because the Officers including JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK can be seen on video acting in concert once the unlawful arrest is initiated by Defendant Mallen.

Moreover, Prior to the physical attack, not one officer can be heard telling the Plaintiff Renardo Lewis that he was under arrest.  At the moment that Officer Enrique Mallen grabbed the Plaintiff [for questioning why the other Officer was

11

yelling at his wife], and the other named Officers physically assaulted him, not a single officer had been threatened by the Plaintiff and the Neither of the Plaintiffs presented an act that would cause an apprehension or the threat of bodily harm.

In fact, Renardo Lewis can be seen providing his identification and he only turns to state that the Officer that the "he's still yelling at her;" neither of his actions at the moment and time having been arrestable offenses.  See video.

Finally, the Plaintiff has provided the summary Police Reports whereby officers [Specifically J. Madison] have admitted to striking the Plaintiff with a closed fist. However, those same reports, as written and attested to by the [Officers] OMIT the fact that MALLEN'S closed fist strikes were to the face.  See Exhibit C7 pg. 4 Incident Report as provided in the original complaint. Therefore, not only were the wrongful arrest and malicious actions of the Officers done [In Concert], but their after action reports were also written [In Concert] so as to protect their colleagues in their attempts to hide their harm.

While the Defendants assert that the Plaintiffs have filed a shotgun pleading with the Court, what cannot be ignored by Counsel is that the complaint fulfills the Pleadings Notice requirements as prescribes by the Georgia Rules of Civil Procedure.  It contains short plaint statements and breaks each of the elements into chapters whereby Defendants are noted within the heading and the subsequent detailed explanations are provided.

12

For example, the elements of the complaint reserved for the Sheriffs Department notes specifically the named Defendants, the alleged torts, the elements of the torts, and the details that comport with the allegations pursuant to statute and caselaw.  The assertions made against the Sheriffs Office do not mirror the assertions made against the City of Marietta Police.  In fact, each chapter could be filed as an individual complaint unto itself; the very anti thesis of the shotgun pleading.

However, if there are any errors noted by the Court, then the Court should allow the Plaintiffs to amend, and correct pursuant to <u>Wagner, 464 F.3d at 1273</u> <u>(reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading sua sponte"); especially when the Plaintiff has provided video stills, exhibits and is prepared to provide the actual video footage for the Court's review.</u>

### B. <u>Plaintiff Has Properly Plead Negligent Hiring and Retention as a Cause of Action Against the Named Police Chief DAN FLYNN and the City of Marietta.</u>

The Defendants have erred in asserting that the Plaintiffs have not properly plead matter concerning vicarious liability.  While Opposing Counsel goes to great lengths to quote elements of the Plaintiffs' complaint concerning the allegations of the Chief's knowledge of the illegal and violent propensities of the Officers,

Counsel purposely omits the usage of the Negligent Hiring and Retention language in his analysis.

Additionally, Counsel fails to address the fact that within the statement of facts that Officer Enrique Mallen is noted for having been fired for dishonesty while serving in his capacity as an officer and Counsel refuses to acknowledge the exhibits filed within the complaint that would go to his dishonesty and propensity to harass citizens.  In fact, element 94 specifically names Enrique Mallen as having been fired for dishonesty.

The heading, alongside the presentation of the Statute and the subsequent statements fulfill the notice pleadings requirements as they are short, plain statement.  Moreover, the issues presented are discoverable and the Defendants should be required to undergo discovery so as to flesh out the matters in full.

Should the Court find that the state-based claim for Negligent hiring and retention to be lacking, then the Court should allow for an amendment to the complaint as dismissal would be improper.  All defendants have been placed on notice of the claim.

Finally, the 1983 claim within itself allows for the concept of vicarious liability as it relates to the Government Employee sued in his Official Capacity as suing the employee is akin to suing the government itself.  The language of the complaint alongside the multiple elements and the overlapping causes of action preclude

14

dismissal of the Chief as he has been named as a complicit Defendant in the matter based upon his retaining Officers who held a propensity for breaking the law.

Therefore, the Chief of Police should remain a Defendant and should be required to participate in Discovery.

C. <u>Public Policy Argument Against 12b, Official Immunity & Qualified Immunity Dismissal As it Relates to All Defendants DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK'S in Their Individual and Professional Capacities.</u>

While not thoroughly analyzed, Defendants rely upon Official and Qualified Immunity and its protections as if it is impossible for a Police Officer or state actor to pierce the veil of immunity.   <u>However, the veil of protection afforded state workers though immunity can be pierced if the acts of the tort feasors are malicious, breach ministerial duties or show that there is a culture that exists allows for the detriment of the rights of the victims</u>. Id.

The Plaintiffs have alleged such facts in his complaint and must be allowed discovery in order to flesh out those details.   Immunity is not a catch all rebuttal to a lawsuit filed against state employees. And the caselaw noted in the below analysis provides insight for the Court.

Under the circumstances and details of the complaint, the Court can conclude that there are sufficiently plead facts, under Georgia Supreme Court Law, that

15

allow for relief.  The Court should, therefore, allow the Plaintiffs' claims to move forward into discovery because to preclude discovery based upon the Defendant's assertion 12b dismissal and immunity in the face of factually plead allegations would violate the Plaintiff's rights under both the Georgia Constitution and the United States Constitution.

Further, The Defendants have previously cited to cases, which universally hold in order for Plaintiffs to overcome Defendants' official immunity, they would need to show that Defendants carried out the above discretionary acts with actual malice or intent to harm the Plaintiff.  In order to show that the Defendant(s) did in fact breach their respective ministerial duties, the case would be required to proceed through the course of discovery; especially when the named Defendants arguably have engaged in conspiring to retaliate, terminate, demote and then move the

Relating to the Protections afforded government employees, The Court states: In Gilbert v. Richardson, we also held that the qualified immunity of a public employee from personal liability does not protect the government employer from liability when the employee is performing his or *347 her job functions.[27] As a result, we concluded that a sheriff may be liable for a deputy sheriff's negligence to the extent of liability insurance coverage.[28] Our rationale was that the government employer should be liable under the doctrine of respondeat superior

for the "inevitable mishaps" that will occur when employees perform their discretionary duties without fear of personal liability.

Applying the same rationale, we extend this rule of liability to municipalities: municipal corporations may be liable for a city employee's negligence in performing their job to the extent the city has waived its governmental immunity through the purchase of liability insurance.[29].  Id.

Therefore, the court of appeals properly affirmed the trial court's grant of summary judgment based on the city's sovereign or governmental immunity. In contrast, a liability insurance policy had been purchased in Peach County to cover claims arising from the operation of the motor vehicles by the sheriff's department. Therefore, the sheriff's governmental immunity defense is waived to the extent of the liability insurance, and Lang is not precluded from pursuing her claim for damages against sheriff Becham in his official capacity under the doctrine of respondeat superior.

Additionally, Government Officials can be held liable for their malicious conduct while operating under color of title. Citing Hackett v. Fulton County School Dist., 238 F. Supp. 2d 1330 - Dist. Court, ND Georgia 2002, which provides a clear litmus test for malice, states: "With respect to the claims made against him in his individual capacity, Jones argues that he is entitled to official immunity.

17

Whereas sovereign (governmental) immunity applies to bar tort claims against counties and their employees acting in their official capacities, <u>official immunity, as recognized under Georgia law, offers limited protection to public officials and employees from tort claims against them in their individual capacities</u>. *See* Woodard v. Laurens County, 265 Ga. 404, 406, 456 S.E.2d 581, 583 (1995); Gilbert, 264 Ga. at 750, 452 S.E.2d at 481. <u>County employees are protected from suits against them in their individual capacities for discretionary acts performed within the scope of their public duties, as long as those discretionary acts were performed "without malice."</u> *See* Coffey v. Brooks County, 231 Ga.App. 886, 888, 500 S.E.2d 341, 345 (1998), *rev'd on other grounds,* Rowe v. Coffey, 270 Ga. 715, 715-716, 515 S.E.2d 375 (1999).

<u>The Georgia Constitution provides that no official immunity is provided, however, for "ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure."</u> Woodard, 265 Ga. at 406, 456 S.E.2d at 583 (quoting 1991 amendments to the Constitution); Gilbert, 264 Ga. at 752, 452 S.E.2d at 482-483; Brown, 226 Ga.App. at 802, 487 S.E.2d at 515.

Here, the Plaintiffs have asserted properly that their complaints are based upon illegal arrest and the malicious acts of the Officers involved. Further, the complaint itself provides more than mere conjecture as each of the elements of each cause of

18

action are provided to the Court and the Defendants are fully aware of each claim and how to respond in defense.

    D. <u>Federal Claims and 1983 Causes of Action Are not Barred As the Plaintiffs have Pled a Culture of Abuse and Racially Based Improprieties Amongst the Government Agencies & Sovereign Immunity Does Not Bar Plaintiffs' Claims against Defendants DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK'S in Their Official Capacity and / or Individual Capacities as there Exists Malice on the Part of the Defendants Acting Under Color of Law.</u>

The Defendants assert sovereign immunity as a defense to claims arising from the conduct of officials.  But again, proof of those concepts can only come through discovery and should not be precluded by 12(b) dismissal.

Under the Georgia Constitution:  Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, <u>their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.</u>

19

Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them for the performance or nonperformance of their official functions.  The provisions of this subparagraph shall not be waived. Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d) (as amended 1991).

Moreover, a local government body can be held liable for a tort that that causes damage to a plaintiff when execution of a government's policy or custom inflicts the injury.  Carter v Dekalb County Ga., 521 F. App'x 725, 728 (11th Cir. 2013) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Accordingly, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005).

There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice so permanent and well settled as to constitute a custom,; or (3) the act or decision of a municipal official with final policy making authority, (such as an arresting Officer on the scene).  Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

Here, the Plaintiff asserts that there exists both a custom and policy of cover-up culture that exists relating to the actions of the Arresting Officers the IHOP, the Chief of Police and the City of Marietta.

First, the Defendant Officers making the unlawful arrest while at the IHOP Restaurant were Municipal [City Officials] who had the power to both create immediate irreversible policy and enforce that same policy on the side of the road; as Police Officers operate under the color of title and have the ability to either Arrest or not Arrest based upon their concept of [Officer's Discretion].  Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).  Moreover, once an arrest has been made and a person has been significantly detained, there is no erasing the arrest, the loss of the passage of time while under arrest or the implications left upon the mind by the details of the arrest.

Additionally, the Officers JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK acted in Concert when they physically attacked the Plaintiff; that attack being prompted by Officer Enrique Mallen.  The acts in concert continued in the writing of the Police Reports by Officer Madison where he admits that closed fist strikes were used while omitting that the strikes were to the Plaintiff's face and omitting who the striking Officer was.

The production of the incident report while omitting critical details is proof positive of a "widespread practice so permanent and well settled as to constitute a custom" under Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002),  See Incident Report Exhibit Previously With Complaint.

21

Moreover, this office believes that the Chief of Police had actual knowledge of the incident and knowledge of the culture of impropriety that exists within the Department relating to issues of Civil Rights violations and Racial Profiling.  The Chief of Police has made statements to the Press relegating the incident to that of encompassing bacon and should therefore be subject to discovery, direct and cross examination.

E. <u>Plaintiff Has  Alleged Sufficient Facts to Establish Liability Against the Defendants  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).</u>

Monell as it is interpreted in Grech v. Clayton Cty..Ga, states that plaintiffs have three methods by which to establish liability in order to prevail against a school official: identify (1)  an officially promulgated district policy authorizing the conduct at issue; (2) <u>identify an official custom or practice of the school district shown through the repeated acts of district officials,</u>; or (3) identify a single act or decision of <u>an official with final policy making authority in the area of the act</u> or decision authorizing or approving the conduct; <u>that person also being Principal Toney</u>. 335F.3d 1326, 1329 (11th Cir. 2003); Cuesta v. Sch. Bd. Of Miami-Dade Cnty., Fla., 285 F.3d 962, 968 (11th Cir. 2002).

However, the Supreme Court's holding does not restrict the Plaintiff to the requirement of finding a decision maker or policy maker at the school board or

legislative level; rather noting that "<u>when execution of a government's policy or</u> <u>custom, whether made by its lawmakers or by those whose edicts or acts may fairly</u> <u>be said to represent official policy,</u> inflicts the injury that the government, as an entity, is responsible."  Id.

Therefore, if the Plaintiff can produce evidence that the defendants acted in a malicious manner; that proof of malice being the video itself. Id.

Moreover, While <u>the Police Officer becomes the policy maker on the side of the</u> <u>road</u> and has the ability to enforce those self made policies under color of title and law.

Finally, the Officer, as is the case in this instance, has the ability to implicate, hide evidence and create facts through the use of language and the writing of reports.  And as noted here, the report as written by Officer Madison Omits the face strikes administered by Officer Mallen.

Therefore, Official Immunity Should Not BAR the Claims Against the Defendants on Either Federal or State Claims Because Malice Has Been properly Alleged. All Defendants including DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK should ebe required to participate in discovery.

 F.  <u>State Based Intentional Tort Claims Are not Barred Because the Plaintiffs</u> <u>Have Pled Facts Sufficient Enough to Constitute Valid Claims & the</u>

<u>Defendants Have not Specifically Defended Against the Malicious</u>

<u>Prosecution,  Intentional Infliction of Emotional Distress, False</u>

<u>Imprisonment and Battery Claims et al.</u>

The Restatement of Law of Torts discloses the following: "For harm resulting to a third person from the tortious conduct of another, a person is liable if he (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the duty to the third person." Restatement, Torts, § 876 (1939). *Madden v. Fulton County*, 102 Ga. App. 19, 22-21 (Ga. Ct. App. 1960).

In the immediate case at BAR, the African American plaintiffs were the victims of a physical attack and false imprisonment at the hands of White Police Officers who adopted and asserted the position of a White IHOP Employee. Additionally, the Chief of Police and the City of Marietta have all but endorsed the attack by continuing to allow the officials to act in their capacities as leadership.

24

The issues taken in the aggregate constitute Intentional Infliction of Emotional Distress as the acts were intentional, egregious and resulted in the harm to the Plaintiff.

Under the Georgia Constitution:  Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them for the performance or nonperformance of their official functions.  The provisions of this subparagraph shall not be waived. Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d) (as amended 1991).

Thus, if a person employed by a city negligently performs or fails to perform a ministerial act or function, ii then he or she may be liable for the injury or damage that resulted.  If, however, that person negligently performs or fails to perform a discretionary act or function, iii so long as that person does not act with "actual

malice" iv (defined below) or with "actual intent to cause injury", that person will not be liable for the injury or damage that resulted.

*As stated, Keele v. Glynn County* states:  Official immunity protects county officers and employees from certain state-law claims. Official immunity protects officials where the claim arises out of the official's performance of a discretionary function.   However, it does not protect officials who "negligently perform or fail to perform their ministerial functions,." *Peterson v. Baker,* 504 F.3d 1331, 1339 (11th Cir. 2007) (citing *Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 483 (1994)). Moreover, it does not protect officials who "act with actual malice or intent to cause injury in the performance of their official functions." *Id.* (citing *Gilbert,* 452 S.E.2d at 483).

 Moreover, A local government body can be held liable under 42 USC Section 1983 when execution of a government's policy or custom inflicts the injury. Carter v Dekalb County Ga., 521 F. App'x 725, 728 (11th Cir. 2013) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Accordingly, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005). A threshold identification of a custom or policy should initially be made.  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

26

The Plaintiff has asserted a proper complaint that shows:  (1) an express policy; (2) a widespread practice so permanent and well settled as to constitute a custom,; or (3) the act or decision of a municipal official with final policy making authority under Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

The Plaintiff has asserted a proper complaint that notes "a deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered" by the student plaintiff. Murphy v. Bajjani, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007) (citations and original quotations omitted).

Finally, the Defendants have failed to argue with specificity against each of the claims; choosing instead to rely upon broad legal principles.  In contrast, the Plaintiffs in each of the elements of the Complaint did provide the Court with the elements of each

Therefore, all State Based Claims as asserted alongside all Federal Civil Rights Due Process Claims should remain valid and the Defendants should be required to participate in discovery.

    G.  1983 and State Based Intentional Tort Claims Against Named Defendants DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK in their Individual and

<u>Professional Capacities Are Not Barred By Ante Litem Notices Because the Statute Does Not Require the Ante Litem Notice for Intentional Torts Relating to Cities/ Municipalities.</u>

In an abundance of caution, Plaintiffs though counsel, served an Ante Litem Notice upon the City of Marietta Loss Prevention Department as well as the Mayor; sent by certified mail in liue of any potential purely based negligence claims.  However, Federal Claims pursuant to 1983 do not require that an Ante Litem Notice be sent prior to filing. Nor do claims arising from Intentional Torts.

Additionally, according to a [Georgia Supreme Court decision](#), WEST v. CITY OF ALBANY et al. S16Q1881 Decided: March 06, 2017, the notice law applies to claims where the cause of action is negligence, which isn't applicable to most police misconduct cases which are typically based upon intentional torts or 1983 claims; neither of which require the Ante Litem notice.

Citing to WEST, "OCGA § 45-1-4 (a) (5). If, as the City argues, the reference to "negligence" in OCGA § 36-33-5 (b) does not limit the type of injury referenced in subsection (a) of that code section, such a construction would require this Court to expand the plain language of subsection (b) to read: "and the negligence which caused the injury, if any," or "and, with respect to injuries caused by negligence, the negligence which caused the injury."

28

The General Assembly did not draft the language of the statute in this manner, and we will not construe the statute as if it did. See Pandora Franchising, LLC v. Kingdom Retail Group, LLLP, 299 Ga. 723, 789 (1) (a) (791 SE2d 786) (2016). In City of Statesboro v. Dabbs,[7] this Court held the plain language of the municipal ante litem notice statute demonstrates it applies to tort claims involving personal injury or property damage, and did not apply to a claim for violation of the Open Meetings Act.

Here, we state further that the statute's plain language demonstrates it applies only to damages caused by negligence, not intentional acts. The City argues that such an interpretation is inconsistent with this Court's holding in City of Statesboro v. Dabbs, id., in which we stated it is clear from the plain text of the municipal ante litem notice statute that it "applies to tort claims regarding personal injury or property damage." But in the Dabbs case, we were drawing a distinction between the types of claims covered by the statute according to its plain language and a claim for violation of the Open Meetings Act. We were not asked to consider whether the statute applied only to claims for negligence.[8] Additionally, a comparison of the municipal ante litem notice statute with the pre-suit notice statute applicable to claims against the state reveals a significant characteristic of those statutes.

29

The municipal ante litem notice statute and the state ante litem notice statute both are limited to certain claims. <u>The statute applicable to claims against municipalities requires the claimant to state "the negligence which caused the injury." OCGA § 36-33-5. While the ante litem notice statute applicable to claims against the state contains no reference to "negligence," it applies instead to "tort" claims. See OCGA § 50-21-26 (a)</u>. The claimant is required to state, among other things, "[t]he acts or omissions which caused the loss." OCGA § 50-21-26 (a) (5) (F). We must presume the General Assembly's use of limiting language to define the type of claims included in these ante litem statutes relating to different governmental entities was a matter of considered choice. See Pandora Franchising, LLC, supra, 299 Ga. at 789 (1) (a).  Id.

Based upon WEST, the arguments made by the Defendants relative to the Ante Litem Statute and the deficiencies in the letter are MOOT because the Ante Litem notice for the claims is not required when the claims are based upon intentional torts and 1983 causes of action, which are federal civil rights claims.   This Office's sending the Ante Litem notice operates as a courtesy; the statutory language being silent on the concept of any form of waiver for notifying a city in an abundance of caution.

Additionally, even if the Court dismisses the Negligent Hiring and Retention Claim as being premised upon a deficient Ante Litem notice, the City of Marietta

can still be held liable based upon the 1983 causes of action and the intentional torts.

Finally, the Court should not deny the claims based upon the Defendants' argument that the Ante Litem Notice was deficient when a numeric amount was clearly provided under the statute; especially when the City of Marietta informed its Coverage Carriers thereby acknowledging the receipt of the letter and the affirming their knowledge of a potential claim.

H. The Malicious Prosecution Claim [H] Is Valid against all Named Defendants DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER AND NOAH MAACK in their Individual and Professional Capacities Because there Was Not Arguable Probable Cause for the Arrest, the Plaintiff had a Right to Resist Arrest and the Claim Has Not Been Addressed With Specificity By the Defendants.

The Plaintiffs have plead with Specificity the claim of Malicious Prosecution and outlined for the Court the Requirements for Malicious Prosecution, those being:  Under Georgia law, malicious prosecution claims arise when one becomes the victim of a baseless civil lawsuit or criminal case. There are generally four factors necessary to bring a successful claim for malicious prosecution:

1. The other person or organization began or continued a criminal or civil legal proceeding against you,

2. Without reasonable grounds or probable cause to believe the allegations of
   the proceeding,

3. With a purpose other than simply getting a judgment in the proceeding, and

4. The proceeding has terminated in your favor.

Most recently, The Supreme Court granted certiorari deciding "whether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment." *Id.* at 924 (J. Alito dissenting).

Justice Kagan's majority opinion answered affirmatively, over Justice Alito's dissent. The majority has two parts. First, the majority held, "if the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.* at 919. The majority explained "legal process" covers any proceeding, including grand-jury indictment or preliminary examination, where the proceeding lacks probable cause because it's tainted by fabricated evidence. *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 915 (2017).

The video of the arrest clearly shows that the Plaintiff did not present a threat to officers. Additionally, the Officers at no point prior to physically attacking Mr. Lewis told him he was under arrest.  Moreover, there was no evidence at the time

of the interaction between the Officers and Mr. Lewis that he had a weapon and witnesses told the Officers that he did not threaten anyone.

1.　Under the above noted facts, the officers possessed neither probable cause nor arguable probable cause to make a lawful arrest as questioning a Police Officer is not grounds for an arrest. <u>Defendant Acted Within the Scope of Their Discretionary Duties While Violating the Plaintiff's Constitutional Rights.</u>

The individual Defendants assert the defense of qualified immunity with respect to each of Plaintiff's § 1983 claims asserted against them in their individual capacities. Qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities. Morris v. Town of Lexington, Ala., 748 F.3d 1316, 1321 (11th Cir. 2014). The Eleventh Circuit applies a two-part analysis to determine whether a defendant is entitled to qualified immunity. kl at 1322. Under the qualified immunity analysis used in this Circuit, the defendant first must prove that the allegedly "' unconstitutional conduct occurred while the defendant official was acting within the scope of the official's discretionary authority. Penley v. Eslinger, 605 F.3d 843, 849 (11th Cir. 2010).

To determine whether the defendant acted within his discretionary authority, the Court asks "whether the [defendant] was (a) performing a legitimate job-related

33

function (that is, pursuing a job-related goal), (b) through means that were within [the defendant's] power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004 ). 3 3.

ln making this determination, the Court does not inquire "whether it was within the defendant's authority to commit the allegedly illegal act." Holloman ex rel Holloman, 370 F .3d at 1266 (internal quotation marks omitted). Instead, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate.

Once a defendant shows that he or she acted within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the defendant's conduct violated the plaintiff's constitutional rights and (2) that the constitutional rights violated were "clearly established when the defendant committed the act complained of." Morris, 7 48 F.3d at 1322 (internal quotation marks and citation omitted); see also Penley, 605 F.3d at 849 ("Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." (internal quotation marks and citation omitted)). The qualified immunity inquiry can begin with either prong. Morris, 748 circumstances." F. 3d at 1322.

If the plaintiff fails to make either of those showings, however, then the defendant is entitled to qualified immunity. Keating v. City of Miami, 598 F.3d 753, 761 (11th Cir. 201 O); see also Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1298 (11th Cir. 2003) (finding that defendants were entitled to qualified immunity based on plaintiff's failure to allege constitutional violation).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [individual in the defendant's position] that his conduct was unlawful in the situation he confronted." Morris, 7 48 F.3d at 1322 (emphasis in original) (internal quotation marks and citation omitted). Although a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, existing precedent must have placed the statutory or constitutional question beyond debate." kl (internal quotation marks and citation omitted).

A plaintiff may demonstrate that a right is clearly established by proceeding in one of three ways: First, [the plaintiff] may show that "a materially similar case has already been decided." Second, [the plaintiff] can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation."

Finally, the conduct involved in the case may "so obviously violate[] th[e] constitution that prior case law is unnecessary." Under controlling law, [the plaintiff] must carry [his] burden by looking to the law as interpreted at the time by

35

the United States Supreme Court, the Eleventh Circuit, or the [Georgia] Supreme

Court. kl (some alterations in original) (quoting Terrell v. Smith, 668 F.3d 1244,

1255 (11th Cir. 2012)). Here, it is clear that each of the individual Defendants

acted in his discretionary authority during the events that gave rise to this lawsuit.

The issues raised within the Complaint, and discovery raise genuine issues of

material fact relative to the conduct of the Police in attacking the Plaintiff

physically after he inquired as to why the Officer was still yelling at his wife.

Additionally, video footage shows the Officers use of unnecessary force as they

slam him up against a wall, electrocute him several times and finally beat him in

the face.

"[T]he lawfulness of seizures pursuant to legal process turns on the validity of

the legal process itself." Thus, courts have been instructed by the Supreme Court to

examine whether "the judicial officer issuing such a warrant was supplied with

sufficient information to support an independent judgment that probable cause

exists for the warrant." Therefore, "seizures pursuant to legal process concern

whether the judicial officer who approved the seizure had sufficient information to

find probable cause."

The Plaintiff has noted within his analysis that there lacked sufficient evidence

to prove that a crime had even been committed at the time of the arrest.  The

question remains as a genuine issue of material fact whether the STATE provided

<u>the Court with facts valid enough to make a qualified determination of probable</u>

<u>cause at all</u>.

     i.   *Defendants Violated Lewis' Constitutional Rights Pursuant to <u>Skop v. City</u>*

             *<u>of Atlanta</u>, 485 F.3d 1130, 1143 (11th Cir. 2007)?*

Citing to Skope:  "We begin, therefore, with the first step in the qualified

immunity inquiry — whether Brown violated Skop's constitutional rights in

arresting her. Under the Fourth Amendment, an individual has a right to be free

from "unreasonable searches and seizures." In Fourth Amendment terminology, an

arrest is a seizure of the person, *California v. Hodari D.*, <u>499 U.S. 621, 624</u>, <u>111</u>

<u>S.Ct. 1547</u>, <u>113 L.Ed.2d 690</u> (1991), and the "reasonableness" of an arrest is, in

turn, determined by the presence or absence of probable cause for the arrest.

"Probable cause to arrest exists when law enforcement officials have facts and

circumstances within their knowledge sufficient to warrant a reasonable belief that

the suspect had committed or was committing a crime." *United States v. Floyd*, <u>281</u>

<u>F.3d 1346, 1348</u> (11th Cir.2002) (per curiam) (quotation marks omitted). This

probable cause standard is practical and non-technical, applied in a specific factual

context and evaluated using the totality of the circumstances. *See Maryland v.*

*Pringle*, <u>540 U.S. 366, 370</u>, <u>124 S.Ct. 795</u>, <u>157 L.Ed.2d 769</u> (2003).

    While an officer who arrests an individual without probable cause violates the

Fourth Amendment, this does not inevitably remove the shield of qualified

immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable."

Thus, even if we determine that the officer did not in fact have probable cause, we apply the standard of "arguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant ] *could have believed* that probable cause existed to arrest." *Lee v. Ferraro, 2M* F.3d 1188, 1195 (11th Cir.2002) (emphasis added, quotation marks omitted). Indeed, this is "all that is required for qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001) (per curiam). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists.

Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime, *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir.2004), and the operative fact pattern. Here,

the officer suggests that there are two possible crimes for which Skop could be arrested: obstructing a police officer in the lawful discharge of his official duties, and refusing to obey an order from an officer directing traffic. If Officer Brown possessed probable cause or arguable probable cause to arrest Skop for either, he is entitled to qualified immunity. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007).

In the present case, the Court would be required to determine whether arguable probable cause exists, which within itself is a Genuine Issue of Material Fact under the present circumstance and a question that should not be decided to the detriment of the Plaintiff at the phase of 12b Dismissal.  Moreover, there is video that shows that Mr. Lewis is not acting in an aggressive manner towards the Police Officers. Both he and his wife were expressing their displeasure in their treatment by the IHOP employees, expressing their concerns to the Police and rebutting the false accusations; none of which are crimes.

Finally, while the City and its Defendants rely heavily on the wording of the Nolle Prosequi document written by the District Attorney, the core document itself dismisses all 27 criminal counts; meaning that the Diststict Attorney declined to prosecute even the most minor of the 27 criminal charges.  There exists a litany of cases where it was determined that probable cause to arrest did not exist where the accused conducted themselves in a far more questionable manner:  Merenda v.

39

Taylor, 2013 U.S. App. Lexis 2351- no probable cause. for disorderly conduct where defendant calls officer "a f** a**" because he was not shouting and did not appear to be a danger to anyone as he walked away from officers; Knowles v. State, 340 Ga. App. 274 (2017)- no probable cause. where defendant yelled, cursed, referenced his "damn ID," and "fuck you" once to the officer w/ no indication that defendant exhibited any non-verbal aggressive behavior.

The lecture provided by the District Attorney does little to weaken the fact that the Plaintiff Renardo Lewis' case was dismissed on all counts and the DA in a Nolle Prosequi cannot unilaterally determine probable cause while at the same time proclaiming the innocence of the accused.

ii. The Plaintiff Had a Right to Defend Himself Against the Unlawful Arrest Pursuant to *Bad Elk v. United States*, 177 U.S. 529 (1900) and Georgia Supreme Court Case S19G1236. GLENN v. THE STATE.

*Bad Elk v. United States*, 177 U.S. 529 (1900), was a United States Supreme Court case in which the Court held that an individual had the right to use force to resist an unlawful arrest and was entitled to a jury instruction to that effect. Glenn v. the State follows the assertion that the accused has the right to resist an unlawful in Georgia arrest within reason. Christopher Glenn's petition for a writ of certiorari was granted for consideration of whether the Georgia Court of Appeals erred in affirming a trial court's order revoking Glenn's probation based on its

determination by a preponderance of the evidence that Glenn committed felony interference with government property by kicking and damaging the door of a police car when he was detained inside. Glenn claimed he damaged the door in the court of exercising his common-law right to resist an unlawful arrest and detention; this claim was rejected by both the trial and appellate courts.

On appeal, the Georgia Supreme Court addressed: (1) whether a person has a common-law right to attempt to escape from the detention resulting from an unlawful arrest; and (2) if so, whether a person may damage government property in such an attempt. The Court held that the common-law right to resist an unlawful arrest includes the right to use proportionate force against government property to escape an unlawful detention following the arrest. Because the trial court found that Glenn's arrest was unlawful but did not then consider whether the force he used in attempting to escape the ensuing unlawful detention was proportionate, the Court vacated the Court of Appeals' decision with direction that the case be remanded to the trial court to make this "essential" determination.

The Glenn Court noted in its determination that the Accused had a right to defend himself against an unlawful arrest that:  "First, we have found no authority in the Georgia Constitution that expressly restricts the right to use the proportionate force necessary to resist an unlawful arrest or escape from an unlawful detention. The Georgia Constitution, in identical text to the Fourth

Amendment to the United States Constitution, provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated[.]" Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. Thus, an arrest, which is a seizure of one's person, must be reasonable. See Brown v. State, 293 Ga. 787, 791 n.6 (750 SE2d 148) (2013) (Paragraph XIII is generally applied in accord with the Fourth Amendment in the context of this guarantee.). This provision of the Georgia Constitution did not displace the common-law right by forbidding, expressly or by necessary implication, the extrajudicial remedy of using 31proportionate force to resist an unlawful arrest or escape from an unlawful detention.

Nor have we found any statutory authority that places limitations on the common-law right to resist an unlawful arrest or escape from an unlawful detention. The offense at issue in this case, interference with government property, was enacted in 1968. See Ga. L. 1968, p. 1317, § 1 (now codified as OCGA § 16-7-24 (a)). The common-law right to resist an unlawful arrest or detention was a longstanding part of Georgia law by then, and the Code section does not expressly provide that it shall be no defense that the destruction, damage, or defacement of government property was incidental to the defendant's exercise of the common-law right to resist an unlawful arrest or detention. Consequently, we see no basis for concluding that the Code section displaced the common-

law right.2727 See Undisclosed LLC v. State, 302 Ga. 418, 421 (2) (a) (807 SE2d 393) (2017) ("[A]lthough the common law may be amended [by statute], such changes must be clear." (citations and punctuation omitted)); Grange Mut. Cas. Co. v. Woodard, 300 Ga. 848, 854 (2) (b) (797 SE2d 814) (2017) (where plain language of statute did not expressly or by necessary implication contravene common law principles, court could not conclude that the statute displaced those common law principles).

Based upon the facts as presented by the Plaintiff, and contrary to the assertions of the Defendants, the Plaintiff was not in the process of committing [any] crime at the point where the Officers unlawfully detained him.

And despite the writings of the Officers that accuse the Plaintiff of kicking, punching and attempting to grab their weapons, there is not proof of the assertions; especially when the Officers have omitted details from their own reports.

Finally, the Successful Nolle Prosequi itself allows for the claims presented in the Lawsuit; thereby precluding 12b dismissal as the claims for Malicious Prosecution as a 4th amendment concept and as a federal Civil Rights Concept remain viable.

## IV.   Closing

The Plaintiffs have noted that there are causes of action that are viable within the Complaint and have argued appropriately that the Defendant's Assertions that

the Complaint is a Shotgun Pleading and Fails to State a claim is without merit.

There is evidence that should be brought forth in discovery that proves malice on

the part of DAN FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY

FOWLER AND NOAH MAACK. Finally, the Defendants have failed to argue

with specificity each and every claim asserted by the Plaintiffs and those that

omitted arguments should not preclude the continuance of the complaint.

Therefore, the named Defendants including the City of Marietta should be required

to submit to discovery.

The Plaintiffs Pray:

    A. That the 12b Motion to Dismiss be denied as it relates to all named
       Defendants in their Individual and Professional Capacities on all Federal and
       State Based Claims as the Plaintiffs have filed a well pled complaint;

    B. That Plaintiff Claims not addressed with Specificity by the Defendants
       remain intact;

    C. That each of the named Defendants including the City of Marietta, DAN
       FLYNN, JOSHUA MADISON, ENRIQUE MALLEN, STACY FOWLER
       AND NOAH MAACK be required to submit to discovery;

    D. That the Court allow the Plaintiffs to cure any noted defects prior to a
       dismissal; and

E.  That the Court allow the Plaintiffs to file into the record the Video Footage

of the actual incident so that the Court may review it alongside the

complaint, Motions and Responses.

Submitted June 3, 2021,

/ss/Kamau K. Mason

Kamau K. Mason, Esq. for Plaintiff

BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENARDO NEHEMIAH LEWIS
LUBREEZE LEWIS –[FRANKLIN],

           Plaintiffs,

v.

CITY OF MARIETTA ET AL
And John Doe

CIVIL ACTION

FILE NO.: 1:21-cv-01883-ELR

## PLAINTIFF'S MOTION TO FILE ADDITIONAL PAGES

    COMES NOW Plaintiff and files this Plaintiff's Consolidated Brief in

Opposition to ruling to dismiss the present claim.  This brief exceeds the required

limit of 25 pages. The Plaintiff respectfully requests that the Court allow for the

addition of 19 Additional pages as the Court has required the Plaintiff to examine

every element of the present claim and provide analysis.

Submitted June 3, 2021,

                                  /ss/Kamau K. Mason
                         Kamau K. Mason, Esq. for Plaintiff
                             BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This document certifies that the above response complies with the Federal Rules of Civil Procedure.

The Document Font size is 14 Point Times New Roman.

A proper Motion for Additional Pages to file in excess of 25 pages is attached herein.

Submitted June 3, 2021,

/ss/<u>Kamau K. Mason</u>

Kamau K. Mason, Esq. for Plaintiff

BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com