## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RENARDO NEHEMIAH LEWIS,          *
et al.,                          *
                                 *
          Plaintiffs,            *
                                 *
     v.                          *          1:21-CV-01883-ELR
                                 *
MUHAMMED IFTIKHAR,               *
CEO Individual and Personal, et al., *
                                 *
          Defendants.            *
                                 *

_____

**O R D E R**

_____

Presently before the Court is Defendants Muhammed Iftikhar; Iftikhar Enterprises, Inc.; David Vanzant; and Joseph Sudderth's (collectively, the "IHOP Defendants") "Motion for Judgment on the Pleadings." [Doc. 79].[1]  The Court discusses its reasoning and conclusions below.

---

[1] The IHOP Defendants filed two (2) identical motions and accompanying briefs for judgment on the pleadings because the first brief was "inadvertently marked" as one in support of a motion for summary judgment. [See Docs. 78, 78-1, 79, 79-1]; [see also Doc. 87 at 2–3]. Plaintiffs Renardo Nehemiah Lewis and Lubreeze Lewis-Franklin subsequently filed two (2) identical briefs in response but only attached exhibits to their second-filed brief. [See Docs. 80, 81, 81-1, 81-2, 81-3, 81-4, 81-5]. For the sake of clarity, the Court refers only to the IHOP Defendants' pending motion at docket entry 79 and Plaintiffs' brief in response to that motion at docket entry 80. The Court denies as moot the version of the IHOP Defendants' "Motion for Judgment on the Pleadings" at docket entry 78.

I.     **Background**[2]

This case arises from an incident that took place "in the early morning hours of Sunday, March 31, 2019," at an International House of Pancakes ("IHOP") restaurant in Cobb County, Georgia, involving Plaintiffs Renardo Nehemiah Lewis and Lubreeze Lewis-Franklin.[3]  See Am. Compl. ¶ 21 [Doc. 35].  Upon Plaintiffs' arrival at the IHOP, the employee at the register, Defendant Sudderth, informed Plaintiff Lewis that the restaurant was out of bacon.  See id. ¶ 22.  Plaintiff Lewis exited the restaurant to ask his wife, Plaintiff Franklin, what she wanted to order given that fact.  See id. ¶ 23.  Approximately four (4) minutes later, Plaintiff Lewis re-entered the restaurant where Defendant Sudderth informed him that the grill was now closed.  See id. ¶¶ 24–25.  Plaintiff Lewis and Defendant Sudderth then "engaged in a verbal exchange" regarding the restaurant's "customer service."  See id. ¶¶ 28–30.

Following this exchange, Defendant Vanzant, a cook and manager at the IHOP in question (together with Defendant Sudderth, the "Employee Defendants"), called the police and reported that Plaintiff Lewis had threatened the restaurant staff and had a weapon.  See id. ¶ 32.  According to Plaintiffs, Defendant Vanzant's

---

[2] For additional factual and procedural background, the Court refers to its Order dated December 19, 2022.  [Doc. 60].

[3] "In determining whether a party is entitled to judgment on the pleadings," a court "accept[s] as true all material facts alleged in the non-moving party's pleading[s] and . . . view[s] those facts in the light most favorable to the non-moving party."  Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).

statements to the police were utterly false.  See id. ¶¶ 31–35.  Officer Joshua Madison of the City of Marietta Police Department initially responded to the call and was soon joined by other police officers, including Officers Enrique Mallen, Stacey Fowler, and Noah Mack (collectively, the "Responding Officers").  See id. ¶¶ 36, 49, 55.  After the Responding Officers' arrival, Plaintiff Lewis engaged in several verbal altercations with Officer Madison who was speaking with Defendant Sudderth and Plaintiff Franklin.  See id. ¶¶ 45–48, 59.  At some point while he was speaking with Officer Fowler, Plaintiff Lewis overheard Officer Madison "yelling in an aggressive manner" at Plaintiff Franklin, prompting Plaintiff Lewis to turn towards Officer Madison.  See id. ¶ 61.  Subsequently, Officer Mallen attempted to restrain Plaintiff Lewis.  See id. ¶ 62.  The other Responding Officers soon joined Officer Mallen in attempting to subdue and arrest Plaintiff Lewis.  See id. ¶¶ 66–68.  The physical altercation between the Responding Officers and Plaintiff Lewis resulted in injuries to Plaintiff Lewis who, after finally being handcuffed, was taken to the hospital and then the Cobb County Detention Center.  See id. ¶¶ 70, 78, 82.  That same day, Plaintiff Lewis was initially charged with aggravated assault against an officer, felony obstruction, misdemeanor obstruction, and public drunkenness.  See id. ¶ 81.  Plaintiff Lewis was later charged with twenty-seven (27) criminal counts stemming from the incident, including six (6) counts of "terroristic threats."

See id. ¶¶ 85–86.   However, the State of Georgia entered a *nolle prosequi* on December 11, 2020.  See id. ¶ 97.

Subsequently, on March 29, 2021, Plaintiffs filed their Complaint in the Superior Court of Cobb County, Georgia.  See generally Compl. [Doc. 1-1 at 26– 141].  Defendants timely removed the action to this Court on May 6, 2021.  See Notice of Removal [Doc. 1].  By an Order dated March 3, 2022, this Court allowed Plaintiffs to amend their Complaint rather than dismiss it as a shotgun pleading.  [See generally Doc. 31].  On March 24, 2022, Plaintiffs submitted their First Amended Complaint, bringing a variety of federal and state law claims against the IHOP Defendants as well as the Responding Officers, Cobb County Sheriff Neil Warren, the City of Marietta, and the Marietta Police Chief Dan Flynn (the "Officer and Government Defendants").  See generally Am. Compl.  In response to Plaintiffs' Amended Complaint, the IHOP Defendants filed their Answers while the Officer and Government Defendants filed motions to dismiss.  See Answer of Defendant Joseph "Bubba" Sudderth [Doc. 36]; Answer of Muhammed Iftikhar and Iftikhar Enterprises, Inc. [Doc. 37]; Answer and Affirmative Defenses of Defendant David Vanzant [Doc. 42]; [see also Docs. 38, 39, 41].  On December 19, 2022, the Court granted the Officer and Government Defendants' motions to dismiss and dismissed all claims against them.  [See generally Doc. 60].  Following dismissal of the Officer

and Government Defendants, the Counts remaining against the IHOP Defendants

are as follows:

| Count | Claim[4] | Alleged Against Defendant(s) |
|---|---|---|
| III | 42 U.S.C. § 1983 (Malicious Prosecution) | The IHOP Defendants |
| V | False Imprisonment | The IHOP Defendants |
| VI | Malicious Prosecution | The Employee Defendants |
| VII | Intentional Infliction of Emotional Distress ("IIED") | The Employee Defendants |
| XII | 42 U.S.C. § 1983 (Conspiracy) | The IHOP Defendants |
| XIII | Vicarious Liability | Iftikhar and Iftikhar Enterprises, Inc.[5] |
| XIV | Negligent Hiring and Retention | Iftikhar and Iftikhar Enterprises, Inc. |
| XV | Loss of Consortium | The IHOP Defendants |

---

[4] Defendants timely removed the case to this Court on the basis of federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441(a); Notice of Removal at 3–4.  Because Plaintiffs' state law claims "arise out of a common nucleus of operative fact" with their federal law claims, the Court may properly exercise supplemental jurisdiction over those state law claims.  See 28 U.S.C. § 1367(a); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742–43 (11th Cir. 2006).  Accordingly, this Court considers Plaintiffs' state law claims pursuant to Georgia substantive law.  See Hanna v. Plumer, 380 U.S. 460, 465 (1965) (noting that, pursuant to the "[t]he broad command of Erie[,]" federal courts sitting in diversity "are to apply state substantive law"); Mullins v. M.G.D. Graphics Sys. Grp., 867 F. Supp. 1578, 1580 (N.D. Ga. 1994) (explaining that "a federal court sitting in diversity is to apply the choice of law rules of the forum state" and that "[u]nder Georgia's choice of law rules, the substantive law to be applied in a tort case is" that of the place "where the injury [took place]").
[5] According to the Amended Complaint, Defendant Iftikhar is the CEO of Defendant Iftikhar Enterprises, Inc., which is doing business as IHOP.  See generally Am. Compl.

Following the beginning of discovery, the IHOP Defendants filed their instant "Motion for Judgment on the Pleadings," which Plaintiffs oppose.[6] [See Docs. 71, 79, 80]. The Court subsequently granted the IHOP Defendants' separate motion requesting a stay of discovery until resolution of their pending motion. [See Docs. 89, 90]. Having been fully briefed, the IHOP Defendants' motion for judgment on the pleadings is now ripe for the Court's review.

## II.    Legal Standard

The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998); Roma Outdoor

---

[6] Plaintiffs contend that the IHOP Defendants' instant motion is "an untimely Motion for Summary Judgment or an untimely 12b6 [sic] Motion to Dismiss" because it was not filed in accordance with the deadlines set out in the Parties' Joint Preliminary Report and Discovery Plan (the "JPRDP"). [See Doc. 80 at 1–2]. In the JPRDP, the Parties agree that this district's Local Rules will govern the time for filing motions. [See Doc. 64 at 6]. With the exception of motions for summary judgment and reconsideration, Local Rule 7.1(A)(2) requires that most substantive motions be filed within thirty (30) days of the commencement of discovery. See LR 7.1(A)(2), NDGa. Discovery in this case commenced on January 24, 2023, and the IHOP Defendants filed their present motion for judgment on the pleadings on February 8, 2023. [See Docs. 71 at 2 & n.2; 79]. Therefore, because that motion was filed within thirty (30) days of the beginning of discovery, it is timely. The Court notes that the Parties purported to "restate[]" Local Rule 7.1(A)(2) in the JPRDP. [See Doc. 64 at 6]. However, the JPRDP states that motions should generally be filed within thirty (30) days "after the preliminary planning report is filed or should have been filed" rather than Local Rule 7.1(A)(2)'s requirement that motions be filed within thirty (30) days "after the beginning of discovery[.]" [Compare Doc. 64 at 6], with LR 7.1(A)(2), NDGa. Regardless, even if the Parties' misstatement of Local Rule 7.1(A)(2) governed, the present motion would still be timely. [See Docs. 54 (staying all pre-discovery deadlines including submitting the JPRDP); 60 at 49 (lifting the stay and directing the Parties to submit the JPRDP by January 9, 2023); 64 (the JPRDP filed on January 9, 2023); 79 (the IHOP Defendants' motion for judgment on the pleadings filed thirty (30) days after the JPRDP on February 8, 2023)].

Creations, Inc v. City of Cumming, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008).

Thus, in evaluating a motion for judgment on the pleadings, a court analyzes whether

the complaint "contain[s] sufficient factual matter, accepted as true, 'to state a claim

to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also

Horsley v. Feldt, 304 F.3d 1125, 1131 n.2 (11th Cir. 2002) (explaining that "motions

for judgment on the pleadings are facial challenges to the legal sufficiency of [a

plaintiff's] complaint that 'present a purely legal question'" (alterations adopted)

(quoting Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997))).

Put differently, when deciding a motion for judgment on the pleadings, a court looks

to see whether the plaintiff has pled "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." See

Ashcroft, 556 U.S. at 678.

    "Judgment on the pleadings is appropriate when there are no material facts in

dispute, and judgment may be rendered by considering the substance of the

pleadings and any judicially noticed facts." Hawthorne, 140 F.3d at 1370 (citing

FED. R. CIV. P. 12(c)). "In determining whether a party is entitled to judgment on

the pleadings," a court "accept[s] as true all material facts alleged in the non-moving

party's pleading[s] and . . . view[s] those facts in the light most favorable to the non-

moving party." Perez, 774 F.3d at 1335.

### III.   Discussion

By their instant motion, the IHOP Defendants request judgment on the pleadings on all of Plaintiffs' Counts against them.  [See Doc. 79].  The Court first addresses the federal Section 1983 claims brought in Counts III and XII for malicious prosecution and conspiracy before turning to Plaintiffs' state law claims in Counts V (false imprisonment), VI (malicious prosecution), VII (IIED), XIII (negligent hiring and retention), XIV (vicarious liability), and XV (loss of consortium).

### A.   42 U.S.C. § 1983: Counts III (Malicious Prosecution) and XII (Conspiracy)

The IHOP Defendants request judgment on the pleadings on Plaintiffs' Counts III and XII alleging violations of 42 U.S.C. § 1983 for malicious prosecution and conspiracy based on the argument that they are not "state actors" and therefore cannot be liable under that statute.  [See Doc. 79-1 at 13–17].  In their response brief, Plaintiffs contend that the "nature of the relationship" between the IHOP Defendants and the Responding Officers "remains a genuine issue of material fact" because the IHOP Defendants plausibly created "an agency relationship" when they called 911 to report Plaintiff Lewis.  [See Doc. 80 at 23–24].

42 U.S.C. § 1983 "creates a private right of action against those who violate the rights of others while acting 'under color of any statute, ordinance, regulation, custom or usage[.]'"  Charles v. Johnson, 18 F.4th 686, 694 (11th Cir. 2021) (quoting

8

42 U.S.C. § 1983). "The requirement that the deprivation be made 'under color of state law' means that the deprivation must be made by a [S]tate actor." <u>Id.</u> However, a private actor may be held liable for violations of 42 U.S.C. § 1983 where its conduct can be "fairly attributable" to the State. <u>See id.</u> A private party can be considered a state actor when:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

<u>Rayburn ex rel. Rayburn v. Hogue</u>, 241 F.3d 1341, 1347 (11th Cir. 2001).

Upon review, the Court finds that the IHOP Defendants are entitled to judgment on the pleadings on Plaintiffs' Counts III and XII. In their Amended Complaint, Plaintiffs fail to plead facts by which the Court might infer (1) that the State of Georgia encouraged the IHOP Defendants to violate the Constitution, (2) that the IHOP Defendants perform a "public function that was traditionally the exclusive prerogative of the State," or (3) that the State and the IHOP Defendants were in any way in "position[s] of interdependence." <u>See id.</u>; <u>see also generally</u> Am. Compl. In sum, the law does not support Plaintiffs' contention that the IHOP Defendants may be held liable as state actors pursuant to 42 U.S.C. § 1983 merely because they called the police. Accordingly, because the IHOP Defendants' alleged

conduct cannot be "fairly attributable" to the State of Georgia, they are due judgment on Plaintiffs' Counts III and XII brought pursuant to 42 U.S.C. § 1983.  See Charles, 18 F.4th at 694.

### B.    Count V: False Imprisonment

The IHOP Defendants request judgment on the pleadings as to Plaintiffs' Count V for false imprisonment because they claim that Plaintiffs' detention was not unlawful.  [See Doc. 79-1 at 11–12].  In response, Plaintiffs contend that the IHOP Defendants "create[d] the circumstances" of Plaintiff Lewis' detention in being "prevented from lawfully exiting the restaurant" and that, "as a Black man, [Plaintiff Lewis] could not leave [the restaurant] without instantly becoming a fleeing felon." [See Doc. 80 at 18].

Pursuant to Georgia law, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."  O.C.G.A. § 51-7-20.[7]  "The tort of false imprisonment has two essential elements: a detention and the detention's unlawfulness."  Lyttle v. United States, 867 F. Supp. 2d 1256, 1297 (M.D. Ga. 2012) (citing Ferrell v. Mikula, 672 S.E.2d 7, 10 (Ga. Ct. App. 2008)).  "Generally, one 'who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment,

---

[7]  In their response brief, Plaintiffs cite to O.C.G.A. § 16-5-41 as the basis of their false imprisonment claim.  [See Doc. 80 at 18].  However, that is a criminal statute that does not give rise to a private cause of action, whereas O.C.G.A. § 51-7-20 is the corresponding civil tort statute for false imprisonment.

in the absence of justification[.]'" Scott Hous. Sys., Inc. v. Hickox, 329 S.E.2d 154, 155 (Ga. Ct. App. 1985) (quoting Webb v. Prince, 9 S.E.2d 675, 677 (Ga. Ct. App. 1940) (per curiam)).

> But one who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for the arrest, but without making a charge or requesting an arrest, does not thereby make himself liable for false imprisonment. However maliciously and without probable cause the defendant may act in reporting to an officer facts which justify an arrest[,] if the arrest is made without his command, request[,] or direction, he is not liable. The mere fact that he asked that the law be enforced without assuming and declaring or directing the precise procedure by the officer will not make him liable.

Webb, 9 S.E.2d at 677–78 (per curiam). And an officer in Georgia may lawfully conduct a warrantless arrest where the "offense is committed in such officer's presence or within such officer's immediate knowledge" or "[f]or other cause [where] there is likely to be a failure of justice for want of a judicial officer to issue a warrant." See O.C.G.A. § 17-4-20.

Here, the Court finds that Plaintiffs' false imprisonment claims against the IHOP Defendants each fail for at least two (2) reasons. First, as to Plaintiff Lewis, the Amended Complaint does not provide any allegations by which the Court could plausibly infer that the IHOP Defendants commanded, requested, or directed the Responding Officers to detain him. At most, Plaintiffs only allege that the Employee Defendants called the police under false pretenses and cooperated with the Responding Officers once they arrived. See Am. Compl. ¶¶ 31–32, 44, 178, 180,

184; see also Webb, 9 S.E.2d at 677–78 (per curiam).  Plaintiffs' allegations and video of the incident further support that the Responding Officers arrested Plaintiff Lewis only after assessing the scene and interacting with Plaintiff Lewis rather than at the Employee Defendants' urging or command.  See Am. Compl. ¶¶ 42, 44, 46–48, 58–59, 61, 74, 78–79; [Doc. 60 at 28–34, 37–40]; see also O.C.G.A. § 17-4-20. Second, this Court previously found that the Responding Officers possessed at least arguable probable cause to detain and arrest Plaintiff Lewis after he repeatedly disobeyed the Responding Officers' orders, yelled at them, and resisted their attempts to restrain him, resulting in a violent physical altercation.  [See Doc. 60 at 28–34, 37–40]; see also Am. Compl. ¶¶ 46–49, 58–59, 61.  Indeed, the initial charges for which Plaintiff Lewis was arrested appear largely unrelated to the Employee Defendants' statements to the police and instead relate to Plaintiff Lewis' interactions with the Responding Officers.  See Am. Compl. ¶ 81 (alleging that the criminal warrant issued against Plaintiff Lewis following his arrest was for aggravated assault against an officer, felony obstruction, misdemeanor obstruction, and public drunkenness).

As for Plaintiff Franklin, her false imprisonment claim appears to be premised on her alleged detention during the Responding Officers' initial investigation after arriving at the IHOP and during the subsequent arrest of Plaintiff Lewis.  See Am. Compl. ¶ 182.  Similar to Plaintiff Lewis, the Court finds that Plaintiff Franklin's

claim fails because (1) Plaintiffs do not allege that the Employee Defendants directed the Responding Officers to detain Plaintiff Franklin, see generally Am. Compl., and (2) the Responding Officers' limited detention of Plaintiff Franklin throughout the underlying incident was lawful given that the Responding Officers were investigating a 911 call and were trying to regain control of an escalating situation during and after the verbal and physical altercation they had with Plaintiff Lewis. See Michigan v. Summers, 452 U.S. 692, 701–02 (1981) (finding that detaining residents while a premises was being searched was justified by the "law enforcement interest in preventing flight" and "minimizing the risk of harm to the officers" and that the "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation"); Overand v. State, 523 S.E.2d 610, 612 (Ga. Ct. App. 1999) ("A dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report."); State v. Misuraca, 276 S.E.2d 679, 683 (Ga. Ct. App. 1981) ("[T]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response.").

Therefore, because (1) Plaintiffs do not offer allegations by which the Court might plausibly infer that the IHOP Defendants commanded or directed the Responding Officers to arrest Plaintiff Lewis and detain Plaintiff Franklin and (2) the Responding Officers' actions were lawful, the Court grants the Employee Defendants' motion for judgment on the pleadings on Plaintiffs' Count V for false imprisonment.

### C.      Count VI: Malicious Prosecution

The Employee Defendants next move for judgment on the pleadings on Plaintiff Lewis' Count VI for malicious prosecution.[8]  [See Doc. 79-1 at 6].  They contend that this claim fails because the Employee Defendants did not cause or instigate Plaintiff Lewis' eventual criminal prosecution.  [See id. at 9–10].  Plaintiffs oppose the Employee Defendants' motion, arguing that the Employee Defendants "made false statements so that [Plaintiff Lewis] could be arrested."[9]  [See Doc. 80 at 17].

Georgia law provides a cause of action where a "criminal prosecution . . . is carried on maliciously and without any probable cause and . . . causes damage to the person prosecuted[.]"  O.C.G.A. § 51-7-40.  The elements of malicious prosecution

---

[8] The Court refers to Count VI only in connection with Plaintiff Lewis because Plaintiffs do not allege that Plaintiff Franklin was prosecuted for any crime in connection with the underlying incident.  See generally Am. Compl.

[9] The Court notes that almost all of Plaintiffs' arguments regarding their malicious prosecution claim rely on caselaw concerning police officers and qualified immunity.  [See Doc. 80 at 10–18].

are "(1) prosecution for a criminal offense; (2) instigated without probable cause;

(3) with malice; (4) under a valid warrant, accusation[,] or summons; (5) which has

terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff."

Rowe v. CSX Transp., Inc., 465 S.E.2d 476, 477 (Ga. Ct. App. 1995) (quoting Wal-

Mart Stores v. Blackford, 449 S.E.2d 293, 294 (Ga. 1994)).

> The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute.  In the former case there is potential liability for false imprisonment or malicious prosecution; in the latter case there is not.  It is clear, though, that the initiation of the criminal action need not be expressly directed by the party to be held liable.

> . . .

> If the defendant . . . merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he *gave information which he knew to be false* and so unduly influenced the authorities, he may be held liable.

Melton v. LaCalamito, 282 S.E.2d 393, 396 (Ga. Ct. App. 1981) (citations omitted)

(quoting William L. Prosser, Handbook of the Law of Torts § 119 at 837 (4th ed.

1971) (emphasis added)); accord Baggett v. Nat'l Bank & Tr. Co., 330 S.E.2d 108,

110 (Ga. Ct. App. 1985).  "Malicious prosecution actions are disfavored under

Georgia law." See Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) (citing Day Realty Assocs., Inc. v. McMillan, 277 S.E.2d 663, 664 (Ga. 1981)).

Here, the Court finds that Plaintiff Lewis' claim for malicious prosecution against the Employee Defendants regarding the terroristic threat charges brought against him is sufficient at this stage.  As to the first two (2) elements enumerated above, the Amended Complaint alleges that the Employee Defendants made false statements regarding Plaintiff Lewis threatening IHOP customers and possessing a weapon during their 911 call and to the Responding Officers.[10]  See Am. Compl. ¶¶ 31–32, 43–45, 52.  Plaintiff Lewis was later charged with making terroristic threats.  See id. ¶ 85.  At this stage, the Court can plausibly infer that the allegedly false statements by the Employee Defendants regarding Plaintiff Lewis threatening customers and possessing a weapon "unduly influenced" and instigated his later prosecution for making terroristic threats.[11]  See Melton, 282 S.E.2d at 396; see also

---

[10] Although the Employee Defendants contend that Plaintiffs' allegations fail to detail what Defendant Sudderth said to the Responding Officers, the Court can infer at this stage that Defendant Sudderth's statements to the Responding Officers were related to the threatening conduct Defendant Vanzant allegedly relayed to the 911 operator that the Responding Officers arrived to investigate.  See Am. Compl. ¶¶ 31–32, 43–45, 52.

[11] The Employee Defendants appear to argue that they cannot be liable for malicious prosecution because their allegedly false report did not cause the initial arrest of Plaintiff Lewis or all the charges eventually brought against him.  [See Doc. 79-1 at 9].  However, the Employee Defendants do not provide authority supporting the proposition that a defendant's false report needs to have been the cause of the initial arrest of or all subsequent charges and proceedings against a plaintiff.  Instead, Plaintiffs have alleged sufficient facts from which the Court may plausibly infer at this stage that the Employee Defendants' allegedly false report regarding Plaintiff Lewis' threats and possession of a weapon later caused the authorities to pursue criminal prosecution of Plaintiff Lewis on six (6) charges of terroristic threats.

Holmes v. Achor Ctr., Inc., 547 S.E.2d 332, 338–39 (Ga. Ct. App. 2001) (reversing the trial court's grant of summary judgment to the defendant on the plaintiff's malicious prosecution claim in part because a jury could find that the false statement led the officer to charge the plaintiff).  Such instigation was plausibly done without probable cause.  See Willis v. Brassell, 469 S.E.2d 733, 739 (Ga. Ct. App. 1996) (noting that probable cause "cannot exist if [the] defendant knew that the facts stated to the law enforcement official were false").

The third element (malice) is also sufficiently pled at this juncture.  "Malice may be inferred where the defendant makes a false statement to police for the purpose of achieving some personal goal, such as revenge[.]"  See Gooch v. Tudor, 674 S.E.2d 331, 335 (Ga. Ct. App. 2009).  Here, the Employee Defendants' allegedly false statements to the Responding Officers could plausibly have been for the purpose of removing Plaintiffs from the IHOP or retaliating against them for their complaints regarding the customer service they received.  See Am. Coml. ¶¶ 28–30.  Thus, the Court may infer at this stage that the Employee Defendants' false statements were made maliciously.

Similarly, the fourth, fifth, and sixth elements are satisfied at this stage because Plaintiff Lewis was formally charged with making terroristic threats, those charges were resolved in Plaintiff Lewis' favor when they were dismissed *nolle prosequi*, and Plaintiff Lewis was allegedly damaged by that prosecution.  See Am.

Compl. ¶¶ 85, 87–92, 97; <u>Renton v. Watson</u>, 739 S.E.2d 19, 23 (Ga. Ct. App. 2013) (noting that an attempt to have someone prosecuted "must result in the issuance of a valid warrant, summons, accusation or other formal process"); <u>Bailey v. Gen. Apartment Co.</u>, 229 S.E.2d 493, 494 (Ga. Ct. App. 1976) ("[T]he filing of a *nolle prosequi* by the prosecutor and dismissal of the action by the trial court constitutes prima facie a termination of the prosecution in favor of the person arrested."). Therefore, the Court finds that Plaintiff Lewis' claim for malicious prosecution against the Employee Defendants is sufficient at this stage.

The Employee Defendants argue that Plaintiff Lewis' malicious prosecution claim fails because the Court previously found that the Responding Officers had probable cause to arrest him, and probable cause for a "related offense" constitutes a "binding determination that there was probable cause for all related charges." [See Doc. 79-1 at 8] (quoting <u>Remeneski v. Klinakis</u>, 473 S.E.2d 223, 226 (Ga. Ct. App. 1996)). However, the authority the Employee Defendants rely upon in support of this argument—the Georgia Court of Appeals' decisions in <u>Remeneski</u> and <u>Holmes v. Achor Center, Inc.</u>—involve factually inapposite scenarios. In <u>Remeneski</u>, the Georgia Court of Appeals stated that probable cause for one charge extended to another charge where both "arose from a single incident that occurred at the same time and place." <u>See</u> 473 S.E.2d at 227. In that case, the Georgia Court of Appeals reversed the lower court's denial of the defendant's motion for summary judgment

regarding the plaintiff's claim for malicious prosecution stemming from charges for simple assault and fighting words for which the plaintiff was acquitted.  See id. at 224–25.  The Georgia Court of Appeals found that the probable cause underlying the plaintiff's simple assault charge extended to the fighting words charge because "the two charges arose from the same confrontation," were "based on the same course of conduct with a reasonable relationship between them," and only differed in that one was based on the plaintiff's "words and the other on his conduct."  See id. at 226–27.  Because a finding of probable cause is sufficient to defeat a malicious prosecution claim, the Georgia Court of Appeals reversed the trial court's decision and directed that it enter summary judgment in the defendant's favor on the plaintiff's malicious prosecution claim.  See id. at 227.

In Holmes, the Georgia Court of Appeals found that the probable cause that justified a charge of criminal trespass applied to the charge of aggravated stalking because both charges arose out of the same incident during which the plaintiff violated a single restraining order "in two ways."  See 581 S.E.2d at 392–93.  The court thus concluded that the two (2) charges "were based on the same course of conduct . . . and were reasonably related."  See id.  And it accordingly upheld the trial court's grant of summary judgment in favor of the defendant on a malicious prosecution charge.  See id. at 393.

Here, the Court previously found arguable probable cause for Plaintiff Lewis'

initial arrest based on his violent obstruction of the Responding Officers'

performance of their official duties.  [See Doc. 60 at 38–39].  However, unlike in

Remeneski and Holmes, this arrest was plausibly the result of an independent

sequence of events entirely separate from the Employee Defendants' allegedly false

statements such that the charges for terroristic threats and the charges related to

Plaintiff's conduct at the time of his arrest were not a part of the same transaction or

course of conduct for purposes of determining probable cause.  Indeed, Plaintiff

Lewis was arguably initially arrested because he engaged the Responding Officers

in a verbal and physical altercation instead of being arrested for anything related to

the Employee Defendants' false reports.[12]  See Am. Compl. ¶¶ 42–62 (detailing the

shouting between Plaintiff Lewis and Officer Madison and Plaintiff Lewis' attempts

to confront Officer Madison after the Responding Officers arrived and just before

the arrest began), ¶ 81 (alleging that Plaintiff Lewis was initially charged with crimes

unrelated to the Employee Defendants' call regarding his threats or possession of a

weapon); [Doc. 60 at 28–31].  Therefore, the Court rejects the Employee

Defendants' contention that the arguable probable cause that the Court found

---

[12] The Employee Defendants appear to admit this fact in their motion.  [See Doc. 79-1 at 9] ("[T]he allegations that [Plaintiff] Lewis had a weapon appear[] to have had little, if any, impact on the investigation.  There is no indication that the officers at the scene believed [Plaintiff] Lewis to be armed; he was accused of attempting to grab an *officer's* weapon, not of being armed himself." (emphasis in original)).

justified Plaintiff Lewis' initial arrest for obstruction extends to the Employee Defendants' false statements and the subsequent terroristic threat charges that resulted therefrom because the terroristic threat charges were not reasonably related or based on the same course of conduct pursuant to Georgia caselaw.  See Remeneski, 473 S.E.2d at 227 (noting that probable cause does not automatically extend to all "charges [that] arise at the same place and general time" and that, instead, for probable cause to be shared among certain charges, "there must be more than just a sequential relationship between the charges" at issue).

In short, Plaintiff Lewis has sufficiently alleged that the Employee Defendants maliciously instigated a criminal prosecution against him without probable cause by making allegedly false statements.  Those false statements plausibly resulted in formal charges for terroristic threats against Plaintiff Lewis that were ultimately resolved in his favor.  Plaintiffs have thus plausibly alleged all of the elements sufficient to maintain a Georgia malicious prosecution claim at this stage.  See Rowe, 465 S.E.2d at 477.  The Court accordingly denies the Employee Defendants' motion for judgment on the pleadings with respect to Plaintiff Lewis' Count VI.

### D.    Count VII: IIED

The Employee Defendants move for judgment on the pleadings on Plaintiffs' Count VII for IIED because they claim that a "criminal prosecution supported by probable cause cannot be the basis for an IIED claim." [See Doc. 79-1 at 12].  In

response, Plaintiffs argue that the Employee Defendants' allegedly false statements on the 911 call, to the Responding Officers at the IHOP, and at Plaintiff Lewis' bond hearing were "egregious and outrageous" because they "continued to impress upon the legal system the guilt of a man whom they targeted" and should have known that a "black patron on the wrong end of a fraudulent 911 call . . . could be forcibly arrested[] and harmed in the ensuing arrest." [See Doc. 80 at 21–22].

In Georgia, a claim for IIED requires four (4) elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) [t]he emotional distress must be severe." Odem v. Pace Acad., 510 S.E.2d 326, 332 (Ga. Ct. App. 1998). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Bowers v. Estep, 420 S.E.2d 336, 339 (Ga. Ct. App. 1992); accord Moses v. Prudential Ins. Co. of Am., 369 S.E.2d 541, 543 (Ga. Ct. App. 1988) ("[I]t is not enough that [the tortfeasor's] conduct in a given situation is intentional or that it is

willful and wanton.  In order to warrant recovery[,] . . . the conduct also must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." (emphasis in original)).  For a bystander-plaintiff, such as Plaintiff Franklin, to recover for IIED, she must allege "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress."  See Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82, 85 (Ga. 2000).

Upon review, the Court finds that the Employee Defendants are due judgment on the pleadings on Plaintiffs' IIED claims in Count VII.  Beginning with Plaintiff Lewis, his IIED claim fails for at least three (3) reasons.  First, that claim appears premised on the purportedly "outrageous" behavior of the Employee Defendants making false statements to police and during Plaintiff Lewis' bond hearing, specifically, their purported statements that Plaintiff Lewis possessed a weapon and was threatening customers.  See Am. Compl. ¶ 32–33, 43–45, 220–21; [Doc. 80 at 20–22].  Plaintiff Lewis contends that the Employee Defendants' statements caused (1) the Responding Officers to arrive at the IHOP, (2) the subsequent violent interaction between himself and the Responding Officers, and (3) his arrest and temporary incarceration following that interaction, all of which resulted in emotional distress.  [See Doc. 80 at 20–21].  However, beyond conclusory allegations and his

assertion that a "black patron" is especially vulnerable to violence following a 911 call, Plaintiff Lewis fails to offer explanation or caselaw supporting that purportedly false statements to a police officer are "so extreme in degree[] as to go beyond all possible bounds of decency" and should be "regarded as atrocious, and utterly intolerable in a civilized community." See Bowers, 320 S.E.2d at 339; [Doc. 80 at 20–21].  And the Court is unable to locate caselaw suggesting that such conduct might rise to that high level of "extreme and outrageous."  To the contrary, the law in Georgia is that while "[a] false accusation of dishonesty or lack of integrity . . . is undoubtedly a distressful, even 'horrifying' and traumatizing insult, . . . it [is] a common vicissitude of ordinary life" and thus not extreme and outrageous.  See, e.g., Peoples v. Guthrie, 404 S.E.2d 442, 444 (Ga. Ct. App. 1991) (collecting cases).

Second, "[i]t is well settled that the [alleged] conduct must have been directed at the plaintiff in order to be actionable" for IIED.  See Reece v. Chestatee State Bank, 579 S.E.2d 11, 16 (Ga. Ct. App. 2003); Lively v. McDaniel, 522 S.E.2d 711, 713 (Ga. Ct. App. 1999) ("Defamatory remarks made to others . . . are classic examples of conduct that, though harmful to the plaintiff, was directed toward the hearer of the statements, . . . and thus is not actionable" in a claim for IIED).  Plaintiff Lewis' allegations that the Employee Defendants are liable because of the false statements they provided to the 911 operator and the Responding Officers are insufficient in this regard.  See Am. Compl. ¶¶ 212–13, 220–21.

Third, "[t]here must be a causal connection between the wrongful conduct and the emotional distress." Odem, 510 S.E.2d at 332. Plaintiff Lewis' alleged emotional distress was directly caused by the actions of the Responding Officers during their physical altercation rather than by the actions of the Employee Defendants. See Am. Compl. ¶¶ 72–73, 84, 213–19, 296 (alleging that Plaintiffs "have been harmed both physically and emotionally" by the actions of the Responding Officers). Thus, Plaintiff Lewis has failed to allege the causation element of his IIED claim. See id.; see also Odem, 510 S.E.2d at 332.

As for Plaintiff Franklin, her bystander IIED claim clearly fails because she has not alleged facts by which the Court can find or plausibly infer that she was physically impacted or sustained physical injury as a result of any of the Employee Defendants' conduct. See Lee, 533 S.E.2d at 85 (enumerating the elements of a bystander-plaintiff IIED claim as "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress"); see also generally Am. Compl. Therefore, the Court grants the Employee Defendants' motion for judgment on the pleadings on Plaintiffs' Count VII.

### E.   Counts XIII (Vicarious Liability), XIV (Negligent Hiring and Retention), and XV (Loss of Consortium)

Finally, the IHOP Defendants move for judgment on the pleadings on Plaintiffs' Counts XIII–XV for vicarious liability, negligent hiring and retention, and

loss of consortium, respectively.  The IHOP Defendants only argue that they are due

judgment on these Counts because they are derivative of Plaintiffs' other claims.

[See Doc. 79-1 at 17].

As the IHOP Defendants correctly note, vicarious liability, negligent hiring

and retention, and loss of consortium are all derivative claims.  See Jones v. Nippon

Cargo Airlines Co., Ltd., Civil Action No. 1:17-CV-1589-TWT-JKL, 2018 WL

1077355, at *13 (N.D. Ga. Jan. 12, 2018) (stating that a negligent hiring, retention,

or supervision claim is a "'derivative' claim that can only survive to the extent that

the underlying state tort claim survives"); Cotton States Mut. Ins. Co. v. Kinzalow,

634 S.E.2d 172, 174 n.3 (Ga. Ct. App. 2006) ("In order to succeed in a claim of

respondeat superior against an employer, one must first prove the existence of an

underlying tort"); Pattee v. Ga. Ports Auth., 477 F. Supp. 2d 1272, 1277 (S.D. Ga.

2007) (referring to loss of consortium as a "'derivative' claim, arising out of a tort

committed against the plaintiff's spouse").  Here, Plaintiffs' Count VI for malicious

prosecution against the Employee Defendants remains.  See supra, part III.C.

Therefore, because Plaintiffs' claims in Counts XIII–XV are derivative and one

underlying state law claim remains, the Court finds that the IHOP Defendants have

failed to establish why they are due judgment on those Counts.  Accordingly, the

Court denies the IHOP Defendants' motion for judgment on the pleadings as to

Plaintiffs' Counts XIII–XV.

## IV.   Supplemental Jurisdiction

As explained above, the Court finds it appropriate to grant the IHOP Defendants' motion for judgment on the pleadings with respect to Plaintiffs' Counts III, V, VII, and XII.  The claims that remain following the Court's resolution of the IHOP Defendants' motion are as follows:

| Count | Claim | Alleged Against Defendant(s) |
|---|---|---|
| VI | Malicious Prosecution | The Employee Defendants |
| XIII | Vicarious Liability | Iftikhar and Iftikhar Enterprises, Inc. |
| XIV | Negligent Hiring and Retention | Iftikhar and Iftikhar Enterprises, Inc. |
| XV | Loss of Consortium | The IHOP Defendants |

Plaintiffs' remaining claims all sound in state law and the Court was only able to exercise jurisdiction over this case in the first instance via federal question jurisdiction.  See supra p. 5, n.4.  Therefore, the Court only maintains jurisdiction over this case by continuing to exercise supplemental jurisdiction.  See id.; 28 U.S.C. § 1367.  A district court may decline to continue to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C. § 1367(c)(3); Silas v. Sheriff of Broward Cnty., 55 F.4th 863, 865 (11th Cir. 2022) ("After it dismissed the federal claims, the district

court had the discretion either to continue to exercise supplemental jurisdiction over the state law claims or dismiss them.").

"Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed." See Silas, 55 F.4th at 865; see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). "The Supreme Court has also put a thumb on the scale: '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise [supplemental] jurisdiction[.]'" See Silas, 55 F.4th at 865 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (first alteration in original)).

Here, because (1) federal question was the only basis upon which this Court possessed original jurisdiction over this removed action, (2) all of Plaintiffs' federal claims have been dismissed, and (3) only Plaintiffs' state law claims remain, the Court declines to continue to exercise supplemental jurisdiction over this case. See id. ("A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed."); 28 U.S.C. § 1367(c)(3); see also Am. Compl. ¶¶ 2–3.

Accordingly, the Court will remand this case to the Superior Court of Cobb County, Georgia.

## V.      Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** the IHOP Defendants' "Motion for Judgment on the Pleadings" [Doc. 78] and **GRANTS IN PART AND DENIES IN PART** the IHOP Defendants' "Motion for Judgment on the Pleadings." [Doc. 79].  Specifically, the Court **GRANTS** the IHOP Defendants' motion with respect to Plaintiffs' Counts III, V, VII, and XII, and **DENIES** the motion in all other respects.  Accordingly, the Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendants David Vanzant and Joseph Sudderth on Counts III, V, VII, and XII and to **ENTER JUDGMENT** in favor of Defendants Muhammed Iftikhar and Iftikhar Enterprises, Inc. on Counts III, V, and XII.

The Court **DIRECTS** the Clerk to **REMAND** this case to the Superior Court of Cobb County, Georgia for further proceedings.  The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED**, this 14th day of June, 2023.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia